IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENCINO HOSPITAL MEDICAL CENTER
16237 Ventura Boulevard
Encino, CA  91436

PARADISE VALLEY HOSPITAL
2400 East Fourth Street
National City, CA 91950

GARDEN GROVE HOSPITAL & MEDICAL
CENTER
12601 Garden Grove Boulevard
Garden Grove, CA  92843

WEST ANAHEIM MEDICAL CENTER
3033 West Orange Avenue
Anaheim, CA  92804

LA PALMA INTERCOMMUNITY HOSPITAL
7901 Walker Street
La Palma, CA  90623

CHINO VALLEY MEDICAL CENTER                    Case No.
5451 Walnut Avenue
Chino, CA  91710

SAN DIMAS COMMUNITY HOSPITAL
1350 West Covina Boulevard
San Dimas, CA  91773

DESERT VALLEY HOSPITAL
16850 Bear Valley Road
Victorville, CA  92395

MONTCLAIR HOSPITAL MEDICAL CENTER
5000 San Bernardino Street
Montclair, CA  91763

SHASTA REGIONAL MEDICAL CENTER
1100 Butte Street
Redding, CA  96001

SAINT MICHAEL'S MEDICAL CENTER, INC
111 Central Avenue
Newark, NJ  07102

LOWER BUCKS HOSPITAL
501 Bath Road
Bristol, PA  19007

KNAPP MEDICAL CENTER
1401 East Eighth Street
Weslaco, TX  78596

HARLINGEN MEDICAL CENTER
5501 South Expressway 77
Harlingen, TX  78550

LUTHERAN HOSPITAL
1730 West 25th Street
Cleveland, OH  44113

SOUTH POINTE HOSPITAL
20000 Harvard Road
Warrensville Heights, OH  44122

EUCLID HOSPITAL
18901 Lakeshore Boulevard
Euclid, OH  44119

FAIRVIEW HOSPITAL
18101 Lorain Avenue
Cleveland, OH  44111

HURON HOSPITAL
13951 Terrace Road
East Cleveland, OH  44112

LAKEWOOD HOSPITAL
14519 Detroit Avenue
Lakewood, OH  44107

CLEVELAND CLINIC HOSPITAL
9500 Euclid Avenue
Cleveland, OH  44195

THE QUEEN'S MEDICAL CENTER
1301 PUNCHBOWL STREET
HONOLULU, HI  96813

                           Plaintiffs,

        v.

XAVIER BECERRA, SECRETARY
OF HEALTH AND HUMAN SERVICES
200 Independence Avenue, S.W.
Washington, D.C.  20201,

                           Defendant.

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATUIRE OF ACTION

1.      Plaintiffs Encino Hospital Medical Center et al. (the "Hospitals"), by and through the undersigned legal counsel, challenge the Secretary of Health and Human Services' (the "Secretary") computation of the Medicare disproportionate share hospital ("DSH") adjustment relating to inpatients enrolled in a Medicare Advantage plan under Part C of the Medicare Act (sometimes referred to here as the "DSH Part C Policy").  The Hospitals filed jurisdictionally proper appeals challenging the DSH Part C Policy with the Provider Reimbursement Review Board ("Board" or "PRRB") fully in compliance with the governing statute, 42 U.S.C. § 1395oo(a).  The Secretary seeks to thwart this appeal.  First, the Secretary persists in applying the DSH Part C Policy although the Court of Appeals and the Supreme Court have invalidated it.  Second, through unauthorized administrative action based on a mere proposed rule the Secretary deprives the Hospitals of the statutory appeal rights to which they are entitled  The Court should find this action prototypically "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).

2.      At issue is Medicare payment for fiscal years identified in Paragraph 15.  The Hospitals' challenge to the DSH Part C Policy is definitively supported by decisions of the Court of Appeals and the Supreme Court.  Specifically, *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*") (vacating 2004 rule as not a logical outgrowth of proposed rule); *Allina Health Servs. v. Price*, 863 F.3d 937, 943–44 (D.C. Cir. 2017) ("*Allina II*") (agency required to conduct notice-and-comment rulemaking before the policy of the 2004 vacated rule can take effect); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019) (affirming *Allina II*).

3.      Apparently undaunted by these judicial decisions, the Secretary, through the Centers for Medicare & Medicaid Services ("CMS") continues to apply the DSH Part C Policy adopted in the now-vacated 2004 rule.   The Court should find that the application of the DSH Part C Policy unlawful because it is procedurally invalid, as the Court of Appeals has now twice ruled (and as the Supreme Court has affirmed), fails any test of reasoned decision-making, and is inconsistent with congressional intent in adopting the Medicare DSH statute.

4.      As part of its apparent "denial" of the *Allina I* and *Allina II*, on August 6, 2020 CMS published in the Federal Register a notice of proposed rulemaking announcing a proposal to adopt retroactively for periods prior to October 1, 2013 (and even prior to the vacated 2004 rule) the same DSH Part C Policy previously vacated in *Allina I* and *Allina II*. 85 Fed. Reg. 47,723 (the "Proposed Rule"). (Exhibit 1) The Proposed Rule posits that, due to the vacatur of the 2004 rule, the agency has no rule governing the treatment of Part C days and must, under the Supreme Court decision in *Allina II* requiring notice-and-comment rulemaking, engage in retroactive rulemaking. *Id.* at 47,724. The Proposed Rule erroneously relies on two bases for its use of retroactivity: (1) that retroactive rulemaking is necessary to comply with the statutory requirement to calculate Medicare DSH payments, and (2) that retroactive rulemaking is in the "public

4

interest" because, absent retroactive rulemaking, the agency "would be unable to calculate and confirm proper DSH payments for the time periods before FY 2014 . . . ." *Id.*  Remarkably, CMS states in the preamble to the Proposed Rule "[w]e do not expect this proposal to have an effect on payments as payments previously made reflect the proposed policy."  *Id*. at 47726.

5.      On August 17, 2020 CMS then issued CMS Ruling 1739-R (the "Ruling") (Exhibit 2),  purporting to deprive the PRRB of jurisdiction over any pending jurisdictionally proper administrative appeals "regarding the treatment of patient days associated with patients enrolled in [Part C] Medicare Advantage plans in the Medicare and Medicaid fractions of the disproportionate patient percentage" so that contractors can apply the result of the retroactive rulemaking to those pending appeals once the new rule is in place.   Ruling at 1-2.  The purported authority for the Ruling is merely the Proposed Rule.  The Ruling addresses appeals of the "Part C day DSH issue" for periods prior to October 1, 2013, including for periods prior to the enactment of the 2004 rule. *Id.* at 7–8. The Ruling, which is "binding" and affects hospitals' substantive Medicare payment and appeal rights, was not adopted through notice-and-comment rulemaking. *See id.* at 1; *see also* 42 C.F.R. § 405.1867 (requiring the Board to comply with CMS rulings); *id.* § 401.108 (defining CMS ruling and explaining they are binding on agency adjudicators).

6.      Before taking any action on an appeal of the DSH Part C Policy, the Ruling requires the Board to determine whether an appeal "satisfies the applicable jurisdictional and procedural requirements of section 1878 of the [Medicare] Act, the Medicare regulations, and other agency rules and guidance." Ruling at 7. The Ruling generally provides for remand of jurisdictionally proper appeals of the "Part C day DSH issue" pending at the Board back to the contractors that issued the payment determinations under appeal. *Id.* at 2, 7-8. Despite depriving the Hospitals of the relief to which they are entitled, although the Proposed Rule has not been finalized,

and while CMS concedes that the Proposed Rule has no payment effect, the Ruling claims the Proposed Rule "eliminates any actual case or controversy regarding the hospital's previously calculated SSI and Medicaid fractions and its DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the issue resolved by the Supreme Court in *Allina* . . . ." *Id.* at 8.

7.     The Hospitals filed a jurisdictionally proper appeal with the Board in compliance with the Medicare Act, 42 U.S.C. § 1395oo(a), challenging their DSH determinations based on the DSH Part C Policy.

8.     The Board remanded the Hospitals' jurisdictionally proper appeals solely in reliance on the Proposed Rule and the Ruling.  (Exhibits 5-7).

9.     The Hospitals seek judicial review of the final remand order issued by the Board. The Board's remand order, which states the PRRB's finding that it possessed jurisdiction over each Hospital's appeal, are the final agency decisions of the Secretary for purposes of judicial review because no further payment determination will be made upon remand. As noted, CMS states in the preamble to the Proposed Rule "[w]e do not expect this proposal to have an effect on payments as payments previously made reflect the proposed policy."  *Id*. at 47726.  As the remand simply confirms the very payment determinations that the Hospitals challenge, it constitutes final payment determinations.

a.     The Board's remand decision must be set aside because, *inter alia*, the Ruling unilaterally, arbitrarily, and otherwise unlawfully (a) declares the Hospitals' long-pending jurisdictionally-proper PRRB appeals moot, (b) remands them for recalculation of the DSH payments at issue using criteria that were set forth in a proposed notice-and-comment rule that purports to have retroactive effect but that has not yet been finalized while, at the same time, prohibits reo-

41073061.1

pening, which is the action necessary to issue the recalculated payments, (c) declares that the PRRB lacks jurisdiction over the appeals while, at the same time, requiring the PRRB to find that it has jurisdiction before remanding the appeals and (d) is based solely on the purported authority of the Proposed Rule.  Further, there are no provisions in the Ruling that provide for review of the final payment calculations, as required by Medicare's statutory appeal provisions. Nor does the Ruling establish any definitive time period for the contractors to act.  Simply put, the Ruling requires remands for recalculated payments that apparently will never be made, thus effectively extinguishing the Hospitals' statutory appeal rights for the payments at issue.

b.      Moreover, even if the Secretary issues the payment criteria to be used when making the recalculated payments in a final rule, the remands required under the Ruling unlawfully prejudice the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C. §1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect DSH payments, some of which extend back more than 15 years (the fiscal periods at issue all predate October 1, 2013, but some go back much further in time).  The Ruling is also unlawful procedurally because it was not adopted using notice-and-comment rulemaking, as required by statute, despite its substantive impact on the Hospitals' Medicare payment rights, and has an unlawful retroactive effect.

10.      But for the Proposed Rule and the Ruling, either at the Hospitals' request or on its own motion the Board would order expedited judicial review ("EJR"), 42 U.S.C. 1395oo(f)(1). An EJR order requires a determination that the PRRB possesses jurisdiction and that it is bound by statute, regulation or CMS ruling.  *Id.* Both of those requirements is satisfied here. The

41073061.1

PRRB's remand orders on their face evidence that the Hospitals filed jurisdictionally proper appeals challenging the DSH Part C Policy.  And, the PRRB is bound by the DSH Part C Policy, which is set forth in a CMS regulation.  It is, therefore, a certainty that the PRRB would order EJR.  Accordingly, the Court should assert its jurisdiction over and review the merits of the Hospitals' claims.  Thus, the Court should find that each of their DSH determinations is invalid because it continues to apply the DSH Part C Days policy which has been invalidated by the Court of Appeals and the Supreme Court, *supra*.

11.     Alternatively, because the Ruling is unlawful procedurally and substantively, the Hospitals seek an order (a) setting aside the provisions of the Ruling that declare the Hospitals' appeals to the PRRB moot and require the PRRB to remand their *Allina II* claims to the Secretary's contractors for recalculation of the Hospitals' DSH payments, (b) reversing the PRRB's remand orders, and (c) instructing the PRRB to reinstate the Hospitals' appeals.

12.     Because the Board's remand order relies solely on the Ruling, which in turn relies solely on the Proposed Rule, the Hospitals also seek judicial review of the legal validity of the Proposed Rule.  It is apparent that CMS believes that the Proposed Rule authorized it to take action via the Ruling. Of course, justice mandates that the Hospitals should have the right to challenge, and that this Court should possess jurisdiction to review, such action.  Under these novel circumstances the Court should find that it possesses jurisdiction over the Proposed Rule and the Court should find that it is invalid to the extent that it prejudices the Hospitals' statutory appeal rights.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§ 1331 (federal question) and 1361 (mandamus).

14.     Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §1391.

## PARTIES

15.     During the relevant periods, the Hospitals were qualified as Medicare-participating, general acute-care hospital-providers under the federal Medicare program pursuant to the Medicare Act.  The Hospitals, Medicare provider numbers and cost reporting periods at issue in this action are as follows:[1]

a.     Encino Hospital Medical Center, Medicare Provider No. 05-0158, appeals fiscal FYE December 31, 2011,

b.     Paradise Valley Hospital, Medicare Provider No. 05-0024, appeals fiscal FYE December 31, 2011,

c.     Garden Grove Hospital & Medical Center, Medicare Provider No. 05-0230, appeals fiscal FYE December 31, 2011,

d.     West Anaheim Medical Center, Medicare Provider No. 05-0426, appeals fiscal FYE December 31, 2011,

e.     La Palma Intercommunity Hospital, Medicare Provider No. 05-0580, appeals fiscal FYE December 31, 2011,

f.     Chino Valley Medical Center, Medicare Provider No. 05-0586, appeals fiscal FYE December 31, 2011,

g.     San Dimas Community Hospital, Medicare Provider No. 05-0588, appeals fiscal FYE December 31, 2011,

h.     Desert Valley Hospital, Medicare Provider No. 05-0709, appeals fiscal FYE December 31, 2011,

i.     Montclair Hospital Medical Center, Medicare Provider No. 05-0758, appeals fiscal FYE December 31, 2011,

---

[1] The Hospitals, their Medicare provider numbers and the fiscal years on appeal are stated in the attachments to the decisions of the PRRB attached as Exhibits 5-7. In the event of any discrepancy between this listing and Exhibits 5-7, the latter shall govern.

j.  Shasta Regional Medical Center, Medicare Provider No. 05-0764, appeals fiscal year ended ("FYE") December 31, 2011,

k.  Saint Michael's Medical Center, Inc, Medicare Provider No. 31-0096, appeals FYE December 31, 2011,

l.  Lower Bucks Hospital, Medicare Provider No. 39-0070, appeals FYE June 30, 2011,

m.  Knapp Medical Center, Medicare Provider No. 45-0128, appeals FYE June 30, 2011,

n.  Harlingen Medical Center, Medicare Provider No. 45-0855, appeals FYE September 30, 2011,

o.  Lutheran Hospital, Medicare Provider No. 36-0087, appeals FYE December 31, 2007,

p.  South Pointe Hospital, Medicare Provider No. 36-0144, appeals FYE December 31, 2007,

q.  Euclid Hospital, Medicare Provider No. 36-0082, appeals FYE December 31, 2007,

r.  Fairview Hospital, Medicare Provider No. 36-0077, appeals FYE December 31, 2007,

s.  Huron Hospital, Medicare Provider No. 36-0101, appeals FYE December 31, 2007,

t.  Lakewood Hospital, Medicare Provider No. 36-0212, appeals FYE December 31, 2007,

u.  Cleveland Clinic Hospital, Medicare Provider No. 36-0180, appeals FYE December 31, 2007,

v.  The Queen's Medical Center, Medicare Provider No. 12-0001, appeals FYE June 30, 2006.

16.  The defendant is Xavier Becerra in his official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

10

17.     The Centers for Medicare & Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program. CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

18.     Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l). Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments. *Id.* One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

19.     A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). The disproportionate patient percentage determines both a hospital's qualification for the DSH payment and the amount of the payment. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

20.     The first fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines the Medicaid fraction as:

41073061.1

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid statute, title XIX of the Social Security Act], but who were *not entitled to benefits under part A* of [the Medicare statute, title XVIII of the Social Security Act], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language above, the numerator of the Medicaid fraction consists of days for patients who were both eligible for medical assistance under the Medicaid statute and "not entitled to benefits under part A" of the Medicare statute.

21.     The other fraction that is used to compute the DSH payment is the "Medicare part A/SSI fraction" or "SSI fraction." The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute] and were entitled to supplemental security income benefits (excluding any State supplementation) . . . , and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the Medicare part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare. The denominator includes all Medicare part A days, whereas the numerator includes only those part A days for patients who are also entitled to social security income ("SSI") benefits under title XVI of the Social Security Act. The Medicare part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment for the cost reporting period beginning in the federal fiscal year. 42 C.F.R. §§ 412.106(b)(2)-(3).

12

<u>Medicare Part C</u>

22.     Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new part C to the Medicare statute to establish a Medicare program that was originally called the Medicare+Choice program and is now called Medicare Advantage.[2]  A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare part C. 42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968, 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

23.     Prior to the 2004 rulemaking at issue, in which the agency attempted to adopt a new policy on the treatment of part C days in the Medicare DSH payment calculation, "the Secretary treated Part C patients as *not* entitled to benefits under Part A." *Allina I*, 746 F.3d at 1106. The pre-2004 regulation limited the Medicare part A/SSI fraction to Medicare patient days that were covered, or paid, by Medicare part A and included other Medicare patient days (not covered under part A) in the numerator of the Medicaid fraction to the extent that those patients were also eligible for Medicaid. *See* 42 C.F.R. § 412.106(b)(2)(i) (2003); *see also* 42 C.F.R. § 409.3 (defining "covered" as services for which payment is authorized). As the Secretary explained when he adopted it, the pre-2004 regulation mandated that only "covered Medicare Part A inpatient days" be included in the part A/SSI fraction. 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent with"

---

[2] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108173), amended part C and renamed it.

the part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the part A/SSI fraction to "covered Medicare Part A inpatient days").

24.     Further, written guidance prior to 2004 repeatedly expressed the Secretary's policy that part C days, as days for which patients were not entitled to part A payment, were to be excluded from the part A/SSI fraction. This guidance included instructions to hospitals and program memoranda transmitting the part A/SSI fractions on an annual basis. *See, e.g.*, *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance).

25.     The agency's consistent policy and practice, before the adoption of the 2004 rule, was to treat part C days as *not* part A days. *Northeast Hosp. Corp.*, 657 F.3d at 16-17 (policy announced in 2004 "contradicts [Secretary's] former practice of excluding M+C days from the Medicare fraction"); *Sw. Consulting DSH Medicare + Choice Days Grps. v. BlueCross BlueShield Ass'n*, PRRB Dec. No. 2010–D52, 2010 WL 4211391, at *12 (Sept. 30, 2010), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 82,679 (reviewing evidence that from 1999 to 2004, the Secretary "never count[ed] M+C days in the [Medicare] fraction except rarely, and then by mistake").

26.     In a 2003 proposed rule, the Secretary proposed "to clarify" his long-held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003). Further, the agency explained that "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id*. The Secretary explained that "once a beneficiary has

elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id.*

27.     In the preamble to a final rule adopted in 2004, however, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10. That 2004 rule announced that the Secretary would "adopt a policy" to include part C days in the Medicare part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004. 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004); *see also Northeast Hosp.Corp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the Secretary] announced that she was 'adopting a policy' of counting [part C] days in the Medicare fraction").

28.     In the 2004 final rule, the Secretary amended the regulation text by deleting the word "covered." 69 Fed. Reg. at 49,246. When CMS initially transmitted the part A/SSI fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude part C days. *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 part A/SSI fractions and specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id*. ¶ 156,930 (same for federal fiscal year 2006 fractions).

29.     In July 2007, CMS issued a revision to a Medicare program manual, with a "purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data necessary to implement the new policy regarding part C days. *Allina Health Servs.*, 904 F. Supp. 2d at 82. Thereafter, in August 2007, the Secretary further amended the text of the DSH regulation gov-

erning part C days without affording hospitals prior notice or opportunity for comment. 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007). Following the amendments in 2004 and 2007, the regulation provided that the part A/SSI fraction includes all patient days (not just "covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)." *Id.* at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added). The amendment of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008. *Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

## The *Northeast Hosp. Corp.* Litigation

30.     In *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16–17 (D.C. Cir. 2011) the Secretary attempted to apply its DSH Part C Policy through a retroactive rule change for cost years prior to the October 1, 2004 effective date of the rule. The Court of Appeals found that the retroactive application to periods prior to October 1, 2004 violated the Supreme Court's longstanding decision in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988). 657 F.3d at 16. The Court held that "the Secretary's present interpretation, which marks a substantive departure from his prior practice of excluding [Part C] days from the Medicare fraction, may not be retroactively applied" to the fiscal years at issue. *Id.*  As noted, at issue is Medicare payment for fiscal years ended 12/31/1999 for all but one of the Hospitals (SSM Saint Anthony Hospital which appeals its fiscal year ended 12/31/2006)).

## The *Allina I* Litigation

31.     In July 2009, the Secretary first published part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007. These fractions for the first time included part C days.

32.      In *Allina I*, hospitals challenged the applicability of the 2004 rule on the treatment of part C days in the DSH payment calculation for cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not meet notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

33.      This Court agreed and held that the policy announced in the 2004 final rule regarding part C days was not the logical outgrowth of the 2003 proposed rule. 904 F. Supp. 2d at 89-92. This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary [] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast Hosp. Corp.*, 657 F.3d at 15). Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule ... that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion." *Id.* at 95.

34.      On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule." 746 F.3d at 1109. Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation. *Id.* at 1111.

35.      With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.* The court reversed, however, a part of this Court's order that required "the Secretary to recalculate the hospitals' reimbursements 'without using the interpre-

17

41073061.1

tation set forth in the 2004 Final Rule.'" *Id.* (quoting the Post-Judgment Order). The Court of Appeals instead remanded, noting that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court" and therefore this Court should have simply "remand[ed] after identifying the error." *Id.* at 1111.

36.     Following remand, the *Allina* plaintiffs commenced suit in this Court, which denied the Secretary's motion to dismiss in *Allina Health Services et al. v. Price*, No. 16-0150(RC) (August 4, 2017) (Stayed pending decision of Secretary whether to request rehearing in *Allina II* [Minute Order 8/17/2017]).

The <em>Allina II</em> Litigation

37.     While the Secretary's appeal from this Court's decision in *Allina I* was pending before the Court of Appeals, the agency engaged in a new rulemaking on the treatment of part C days effective only prospectively, beginning October 1, 2013. In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction" "in an abundance of caution." 78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013). Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the 2004 rule had been. *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

38.     As noted *supra*, the D.C. Circuit issued a decision holding that the Secretary's 2013 rule failed to comply with the notice-and-comment rulemaking requirements of 42 U.S.C. § 1395hh. *Allina Health Services et al. v. Price*, No. 16-5255 (July 25, 2017) (*Allina II*).

39.     On June 3, 2019, the Supreme Court affirmed the Court of Appeals' ruling in *Allina II* as to the notice-and-comment requirement under 42 U.S.C. § 1395hh(a)(2). *Allina Health Servs.*,

18

139 S. Ct. 1804. The Supreme Court held that the agency's 2014 application of the 2004 Part C days policy required notice-and-comment rulemaking under section 1395hh(a)(2) of the Medicare statute. *Id.* at 1810–14. In addition, the Supreme Court's decision did not disturb the Court of Appeals' ruling that the readopted 2004 policy is invalid under 42 U.S.C. § 1395hh(a)(4) because the agency failed to engage in notice-and-comment rulemaking. *Id.* at 1816.

<u>THE PROPOSED RULE</u>

40.     In response to *Allina II*, on August 6, 2020, CMS issued a proposed rule entitled "Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage," 85 Fed. Reg. 47,723 (August 6, 2020) ("the Proposed Rule") (Exhibit 1). The purpose of the Proposed Rule is to "create a policy governing the treatment of days associated with [Medicare] beneficiaries enrolled in Medicare Part C for discharges occurring prior to October 1, 2013, for purposes of determining" DSH payments in light of the decision of the Supreme Court in *Allina II*.  *Id.* at 47,723.

41.     The Proposed Rule asserts that, as a result of *vacatur* of the 2004 rule, CMS has no rule governing the treatment of Part C days and must, under *Allina II*, engage in retroactive rulemaking.  The Proposed Rule thus fails to account for the pre-2004 rule that still governs the treatment of Part C days in the DSH payment in light of the 2004 rule's *vacatur*.  *Id.* at 47,725. Also, the Proposed Rule asserts retroactive rulemaking is (a) necessary to comply with the statutory requirement to calculate Medicare DSH payments, and (b) in the "public interest" because, absent retroactive rulemaking, CMS "would be unable to calculate and confirm proper DSH payments for the time periods before FY 2014 . . . ."  *Id.*

42.     The Proposed Rule has not yet been finalized.[3]  Because CMS has taken final action by ordering remand based on the Ruling, however, the Court possesses jurisdiction over the Proposed Rule.  Administrative Procedure Act, 5 U.S.C. § 704 (Authorizing federal judicial review of "final agency action" for which there is no other adequate remedy.)  By issuing the Ruling on the heels of the Proposed Rule, CMS has already demanded compliance in this case. It is thus sufficiently "final" for purposes of judicial review under 5 U.S.C. § 704.  If finalized as proposed, the new rule would effectively reinstate CMS's vacated 2004 rule and expand its retroactive effect to cover all dates of service prior to October 1, 2013, including dates of service prior to the October 1, 2004 effective date of the 2004 rule.  Although not finalized, CMS has taken action based solely on the Proposed Rule by issuing the Ruling.  If an agency such as CMS believes it is authorized to take action based on a proposed rule, fairness dictates that the victim of such action has the right to challenge it.  Accordingly, the Court should assert jurisdiction over and scrutinize the Proposed Rule.  The Court should find that the Proposed Rule is unlawful for several reasons, including that it (a) is inconsistent with the plain reading of the DSH Statute, which requires Part C Days to be excluded from the Medicare/SSI Fraction and included in the numerator of the Medicaid Fraction (for dually-eligible Medicare Part C enrollees), (b) does not meet the statutory requirements for retroactive rulemaking and (c) as evidenced by the Ruling, deprives the Hospitals of their statutory appeal rights.

<u>The Ruling (CMS RULING 1739-R)</u>

43.     On August 17, 2020, as a direct result of and solely in reliance on, the Proposed

---

[3] On January 20, 2021 the White House issued a Memorandum entitled "Regulatory Freeze Pending Review" instructing heads of executive departments to withdraw rules not published in the Federal Register.  Exhibit 3. Although the Proposed Rule has been published in the Federal Register, the Hospitals interpret this Memorandum as instructing the Secretary to withdraw the Proposed Rule as it has not been published in final form.

Rule, and in clear coordination with it and reliance on it, CMS issued Ruling CMS-1739-R without using notice-and-comment rulemaking.  (Exhibit 2)  This action was improper under 42 U.S.C. § 1395hh(a) because the Ruling establishes the procedural policy by which the Hospitals' DSH payments will be changed and, thus, requires the Secretary to use notice-and-comment rulemaking.  Moreover, the Ruling is based solely on the Proposed Rule.

44.     The Ruling (Exhibit 2 at 2) states that it applies *only* to appeals that include the *Allina II* issue "regarding patient days with discharge dates before October 1, 2013 that arise from Notices of Program Reimbursement ("NPRs") that are issued before CMS issues a new final rule to govern the treatment of patient days with discharge dates before October 1, 2013." Thus, the Ruling purports to have an improper retroactive effect, including for dates of service prior to the October 1, 2004 effective date of the 2004 rule.

45.     The Ruling (Exhibit 2 at 8) requires the PRRB to remand jurisdictionally-proper appeals that include the *Allina II* issue to the applicable MACs to "recalculate the provider's DSH payment adjustment in accordance with CMS's forthcoming rule":

> If the administrative tribunal finds that the <u>applicable jurisdictional</u> and procedural <u>requirements are satisfied</u> for a given claim on the Part C day DSH issue and that any NPR that is the basis for the claim issued before CMS's forthcoming final rule or that arise from an appeal based on an untimely NPR under 42 U.S.C. 1395oo(a)(1)(B) or (C) and any subsequently issued NPR for that fiscal year pre-dates the new final rule then the appeals tribunal will issue a brief written order, <u>remanding each such claim that qualifies for relief under the Ruling</u> to the appropriate Medicare contractor for calculation of the DSH payment adjustment for the period at issue pursuant to the forthcoming rule.

Exhibit 2 at 7-8 (underlining added).  Thus, before issuing a remand, the PRRB must find that the claim meets "applicable jurisdictional requirements."  However, the Ruling states:

> By this Ruling, the Administrator provides notice that <u>the PRRB</u> and other Medicare administrative appeals tribunals <u>lack jurisdiction over the Part C days issue for years before FY 2014</u> as to any appeals arising from NPRs from that period that pre-dates the forthcoming rule or that arise from an appeal based on an un-

> timely NPR under 42 U.S.C. 1395oo(a)(1)(B) or (C) and any subsequently issued
> NPR for that fiscal year pre-dates the new final rule.

Exhibit 2 at 6-7 (underlining added).  The Ruling establishes but does not explain the riddle of

how the PRRB can find it has jurisdiction over a claim over which, under the Ruling that the

PRRB is required to follow, the PRRB explicitly "lacks jurisdiction."

46.     The Ruling adds:

> CMS's action eliminates any actual case or controversy regarding the hospital's
> previously calculated SSI and Medicaid fractions and its DSH payment adjust-
> ment and thereby renders moot each properly pending claim in a DSH appeal in-
> volving the issue resolved by the Supreme Court in *Allina*, provided such claim
> otherwise satisfies the applicable jurisdictional and procedural requirements of
> section 1878 of the Act, the Medicare regulations, and other agency rules and
> guidelines for appeal.

Exhibit 2 at 8-9.  The Ruling contains still another riddle by stating that "this Ruling is

not an appropriate basis for a new reopening of any final determination of the Secretary or a

Medicare contractor or of any decision by a reviewing entity with respect to the Part C days DSH

issue."  Exhibit 2 at 9.  But without a reopening, the MACs do not have a process to use to issue

a revised determination.  And without a revised determination, there is no payment to appeal to

the PRRB.  Thus, the Ruling apparently will terminate the Hospitals' statutory right to appeal

their DSH payments to the PRRB while prohibiting MACs from taking the actions necessary to

issue recalculated payments that the Hospitals could then appeal.

47.     Even more pernicious, no revisions to the payment calculations for the Hospitals

to appeal are anticipated as a result of the Ruling because, CMS freely concedes in the preamble

to the Proposed Rule "[w]e do not expect this proposal to have an effect on payments as pay-

ments previously made reflect the proposed policy."  *Id*. at 47726.  When the MACs made their

initial determinations, which are the subject of these appeals, the MACs likely applied the DSH

Part C Policy, which is precisely what the Proposed Rule and the Ruling instruct the to do.  If so, and as CMS unabashedly admits, there would be no change to the payments at issue.

48.    Because remands made under the Ruling provide for no further review by the PRRB or the Secretary, and since they will not result in any change in payment, they are final agency determinations for purposes of judicial review.

49.    The Ruling states that its remand procedure is necessary "to resolve in an orderly manner pending administrative appeals of the Part C days SSI fraction issue."  Exhibit 2 at 7. With regard to the numerous cases currently pending in this Court on the *Allina II* issue, the Ruling adds:

> Hospitals have filed numerous PRRB appeals challenging the treatment of patient days associated with patients enrolled in Medicare Advantage plans with discharge dates before the effective date of the FY 2014 IPPS/LTCH PPS final rule. . . . In many such cases, the PRRB has granted expedited judicial review (EJR). After the Supreme Court's decision, the United States District Court for the District of Columbia granted the Secretary's motion to consolidate most of these cases (*in re: Allina II-Type DSH Adjustment Cases*, 19-mc-190).  Prior to consolidation, many such cases had been stayed pending the outcome of the *Allina* proceedings.  <u>The Secretary has since moved for a voluntary remand of these consolidated cases so that he can re-examine the claims in light of the Supreme Court's decision and take further action as necessary to comply with the applicable legal standards announced therein.</u>  The Secretary has determined that he has no choice but to engage in a new rulemaking to resolve the issue.

Exhibit 6 at 6 (emphasis added).  Thus, the Ruling requires remand based on a mere proposed rule in anticipation of finalization.

50.    A regulation, 42 C.F.R. §401.108, states that CMS Rulings are binding on all CMS components.  Another regulation, 42 C.F.R. §405.1867, states that, "[i]n exercising its authority to conduct proceedings . . . the PRRB must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in §401.108."

41073061.1

51.     Since publication of the Ruling, the PRRB has remanded numerous appeals challenging the 2004 rule to various MACs. Most of these appeals have now been consolidated in cases pending before the Court. *Allina II-Type DSH Adjustment Cases*, No.19-0190-ABJ.

THE MEDICARE APPEALS PROCESS

52.     Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year.

53.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo.  In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure.

54.     The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

55.     The PRRB lacks the authority to adjudicate the validity of the Secretary's regula-

tions and CMS Rulings.  42 C.F.R. §405.1867.  Thus, when a hospital is entitled to a PRRB hearing, the hospital may request that the PRRB determine whether it has the authority to decide the question of law or regulations relevant to the appeal.  42 U.S.C. § 1395oo(f)(l).  If the PRRB determines that the legal issues raised are outside the scope of its own authority, it must certify the case for "expedited judicial review" or "EJR."  *Id.*  In that event, the hospital has exhausted its administrative remedies, the Secretary's determination is final, and the hospital may commence a civil action for judicial review of the final determination of the Secretary.  *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §405.1842.  An EJR determination is not subject to review by the Secretary or the CMS Administrator but, rather, allows the hospital to proceed directly to court.

56.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision, or an EJR determination, in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. § 1395oo(f).  A hospital may also seek judicial review if the PRRB fails to timely render an EJR determination.  *Id.*  In any of these actions, the Secretary is the proper defendant.  *See* 42 C.F.R. §421.5(b).  Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. § 1395oo(f).  Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

57.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

58.     Reopenings of MAC final determinations are permitted pursuant to 42 C.F.R. §405.1885.  However, a change of legal interpretation or policy by CMS in a regulation or ruling, even if made in response to judicial precedent, is not a permissible basis for a reopening.  42 C.F.R. § 405.1885(c)(2).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

59.     Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Furthermore, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

60.     Additionally, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented.  5 U.S.C. §553.

## PROCEDURAL BACKGROUND

61.     This action arises from the Hospitals' PRRB appeal challenging the DSH Part C Policy for the relevant fiscal years on the grounds that (a) the Medicare/SSI fractions that CMS unlawfully used to calculate those payments improperly included Part C days in the numerator and/or denominator, and (b) the Medicaid fractions that CMS unlawfully used to calculate those

payments improperly excluded Medicaid-eligible Part C days from the numerator.  The Hospitals appealed this legal question by filing timely in accordance with 42 U.S.C. § 1395oo(a), thus establishing a jurisdictionally-valid PRRB appeal.

62.     By letters dated August 19, 2021, September 13, 2021, and September 21, 2021, the PRRB remanded the Hospitals' appeals at issue to their MACs "pursuant to Ruling CMS-1739-R" for "recalculation of the DSH payment adjustment."  *See* Exhibits 5 -7.  The remand letters stated that the Hospitals satisfied jurisdictional requirements. Solely based on the Ruling, however, the PRRB closed the appeals and removed them from its docket.  The effect of the PRRB's remand order would be to allow the MACs to use an as-yet non-existing final rule to "recalculate" the Hospitals' DSH payments, despite that CMS has stated that under the Proposed Rule no payment effect is anticipated.

63.     Because the CMS Administrator did not review the PRRB's remand orders, and as CMS has stated that no payment effect is anticipated on remand, the apparent effect of the PRRB's remand decision is to confirm the payment that the Hospitals previously received and which is the subject of their appeals to the PRRB and, therefore, are final agency actions for purposes of judicial review.

64.     Under the Ruling, the Hospitals have no clear right following the remand to obtain review of the MAC's new determinations or to obtain relief on their remanded appeals as to the proper treatment of Medicare Part C days in their DSH calculations.[4]

---

[4] Apparently CMS recognizes this problem.   CMS has issued to the MACs a Memorandum dated November 20, 2020 (TDL 210078) which apparently seeks to create the appearance that a provider would have the right to appeal following remand even if there is no payment determination.  (Exhibit 4)  Of course this document has not been issued with notice and comment, lacks the force of law, is not supported by the statute or regulations governing appeals (specifically the requirement that a minimum monetary amount be alleged (42 U.S.C. § 1395oo(a)), can be amended or rescinded and thus may not necessarily be relied upon if the

27

## THE REMAND PROCESS IN THE RULING PREJUDICES THE HOSPITALS

65.     By remanding the Hospitals' DSH payments before issuing the final rule setting forth the criteria that the MACs will be using to recalculate those payments, the Ruling deprives the right of the Hospitals to challenge the DSH payments at issue and seek statutory interest. Although the Hospitals may have the separate right to challenge the final rule, if the Hospitals submit to remand the Hospitals may forfeit the ability to pursue that challenge with regard to the payments at issue, which the Hospitals have the statutory right to appeal.

66.     Remand is premature until the final rule is issued.  The Hospitals should have the opportunity to review the recalculation criteria in the final rule before deciding whether to challenge the remand.  This is precisely what happened when CMS issued a previous ruling, CMS Ruling 1498-R.  CMS included in that ruling the specific Medicare payment criteria to be applied by the MACs when recalculating the hospitals' DSH payments, which hospitals nationwide successfully challenged in this Court resulting in settlement  through referral to Magistrate Judge Harvey. *Baptist Saint Anthony's Hospital et al. v. Price*, No. 12—1366 and Consolidated Cases.

67.     Moreover, even if the Secretary issues the payment criteria to be used when making the recalculation in a final rule, the remands required under the Ruling unlawfully prejudice the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C. §1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect DSH payments, some of which extend back many years (the fiscal years at issue all predate Oc-

---

Board nonetheless denies to assert jurisdiction where, as is likely, there is no monetary amount in dispute.

tober 1, 2013).  The Ruling is also unlawful procedurally because it was not adopted using notice

and comment rulemaking, as required by statute, despite its substantive impact on the Hospitals'

Medicare payment rights, and is unlawfully retroactive.

68.     As CMS has conceded that there will be no payment effect, the remands issued

pursuant to the Ruling confirm the payment amounts which the Hospitals challenge and, there-

fore, are final determinations of the Hospitals' rights and are ripe for review by this Court under

42 U.S.C. §1395oo(f).  This action is timely-filed under 42 U.S.C. §1395oo(f).

<u>CAUSES OF ACTION</u>

<u>COUNT I</u>

<u>The Proposed Rule and the Ruling:</u>
<u>Judicial Review Under the APA and the Medicare Act</u>
<u>(Decision is Contrary to Law)</u>

69.     The Hospitals hereby incorporate by reference paragraphs 1 through 68 herein.

70.     The Ruling in reliance solely on the Proposed Rule improperly and prematurely

remands the appeals at issue to the applicable MACs for recalculation of their DSH payments

using payment criteria that have not yet been adopted in a notice-and-comment rule.

71.     The provisions of the Ruling depriving the Board of jurisdiction over otherwise

jurisdictionally valid appeals, and declaring appeals moot and requiring the PRRB to remand

them to the MACs are invalid and must be set aside as inconsistent with 5 U.S.C. §706(2), 42

U.S.C. §§1395oo(a) and (f)(1), 1395hh(a)(2) and (e), and other authorities.  The PRRB's remand

decisions are similarly invalid and must be set aside. Specifically:

>    (1)     In issuing the Ruling CMS has greatly exceeded its extremely lim-
>    ited authority to take action over a jurisdictionally proper appeal pending
>    before the PRRB.  Thus, absent a final PRRB decision, CMS lacks authori-
>    ty to review or to take action regarding the Provider's jurisdictionally prop-
>    er pending PRRB appeal.  *See* 42 C.F.R. § 405.1875(a) ("Nonfinal deci-
>    sions or actions by the Board are not immediately reviewable, except as
>    provided in paragraph (a)(3) of this section.")  The action that CMS has

taken in issuing the Ruling does not come within the limited exceptions in paragraph (a)(3) of the regulation.[5]

(2)     The Medicare reopening regulation, 42 C.F.R. § 405.1885, provides the exclusive authority for the MAC to amend the final determination of Medicare payment for the Provider's fiscal years on appeal.  By its very terms, however, the remand required by the Ruling is not a reopening and, indeed, prohibits reopening. The Ruling states "this Ruling is not an appropriate basis for a new reopening of any final determination of the Secretary or a Medicare contractor or of any decision by a reviewing entity with respect to the Part C days DSH issue."  Ruling at 9.  By prohibiting reopening, the Ruling, therefore, provides no legal basis for the MAC to take action upon remand.

(3)     Even if assuming *arguendo* that the remand required by the Ruling is a reopening, reopening would be unlawful for three reasons.  First, reopening would violate the three year reopening deadline.  Second, reopening is not permitted regarding: "A change of legal interpretation or policy by CMS in a regulation, CMS ruling, or other interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice established by CMS, whether made in response to judicial precedent or otherwise, is not a basis for reopening a CMS or contractor determination, a contractor hearing decision, a CMS reviewing official decision, a Board decision, or an Administrator decision, under this section."  *Id*. § 405.1885(c)(2).  Here, CMS has issued a change of legal interpretation or policy in the Ruling which by CMS' own regulation is not a basis for a reopening.  Third, a reopening would not make a correction.  See Medicare Provider Manual, PRM Pub. 15-1, Section 2931.2 ("the term "correction" includes a revision (adjustment) in an intermediary's determination or intermediary hearing officer decision, Board hearing decision, or Secretary decision, otherwise final, which is made after a proper reopening.")  CMS freely concedes in the preamble to the Proposed Rule "[w]e do not expect this proposal to have an effect on payments as payments previously made reflect the proposed policy."  *Id*. at 47726.  The MAC's action on remand will not make a correction, therefore,  because the MAC is required to simply apply the DSH Part C Policy which it previously applied and which the Provider challenges.

---

[5] (**i**) A Board ruling authorizing discovery or disclosure of a matter for which an objection was made based on privilege or other protection from disclosure such as case preparation, confidentiality, or undue burden (as described in § 405.1853(e)(6)(ii) of this subpart).

(**ii**) A Board subpoena compelling disclosure of a matter for which an objection was made based on privilege or other protection from disclosure such as case preparation, confidentiality, or undue burden (as described in § 405.1857(d)(2) of this subpart).

(4)     Contrary to and in violation of 42 U.S.C. § 1395hh(a)(2), the Rul-
ing was not   issued with requisite notice and comment rule making.   *See
Azar v. Allina*, 139 S.Ct. 1804 (June 3, 2019).

72.     The provisions of the Ruling declaring the Hospitals' claims moot, and the

PRRB's reliance on these provisions in its remand decisions, are arbitrary, capricious, not based

upon substantial evidence, and otherwise contrary to law.  The issuance of the proposed rule has

not rendered the Hospitals' appeals "moot" or eliminated "any actual case or controversy."  *See*

Ruling at 8.  This is because CMS is proposing to adopt retroactively the precise policy that the

Hospitals' PRRB appeals are challenging.

73.     Moreover, even if the Secretary issues the payment criteria to be used when mak-

ing the recalculation in a final rule, the remands required under the Ruling unlawfully prejudice

the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C.

§1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the

DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH

payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect

DSH payments, some of which extend back more than 15 years (the fiscal years at issue all pre-

date October 1, 2013).  In ordering remand, the PRRB explicitly found that it "has jurisdiction . . .

under the provisions of 42 U.S.C. § 1395oo(a)."  Nothing in §1395oo or any other statute author-

izes CMS to divest the Hospitals of the appeal rights granted to them, or the PRRB of the jurisdic-

tion conferred to it, by §1395oo.

74.     The Ruling is also unlawful procedurally because it relies solely on the Proposed

Rule and since it was not adopted using notice-and-comment rulemaking, as required by statute,

despite its substantive impact on the Hospitals' Medicare payment rights, is unlawfully retroac-

tive, and improperly based on the Proposed Rule.

75.      As a result of the foregoing deficiencies, the Hospitals will suffer economic harm

because their DSH payments will likely be lower than those to which they are entitled under the law as interpreted by this Court, the D.C. Circuit, and the United States Supreme Court.

76.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling to be unlawful, and to the extent it prejudices the Hospitals' appeal rights the Proposed Rule to be unlawful, and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

<u>COUNT II</u>

<u>The Proposed Rule and the Ruling:
Judicial Review Under the APA and the Medicare Act
(Decision is Arbitrary and Capricious)</u>

77.     The Hospitals hereby incorporate by reference paragraphs 1 through 76 herein.

78.     The Ruling is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C. §706(2)(A), because it (a) relies solely on the Proposed Rule,  (b) precludes the Hospitals from being able to challenge the payments at issue and obtain interest on any underpayment, (c) improperly and prematurely remands these appeals to the applicable MACs for recalculation of their DSH payments using payment criteria that have not yet been adopted in a notice-and-comment rule, (d) unlawfully applies a procedural policy that was required to have been adopted using notice-and-comment rulemaking, but was not,  and (e) unlawfully purports to have retroactive effect.  Under 42 U.S.C. §1395oo, the Hospitals have the statutory right to challenge their Medicare DSH payments and obtain interest.

79.     As a result of the foregoing deficiencies, the Hospitals will suffer economic harm because their DSH payment will likely be lower than those to which they are entitled under the law as interpreted by this Court, the D.C. Circuit, and the United States Supreme Court.

80.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling to be unlawful, and to the extent it prejudices the Hospi-

tals' appeal rights the Proposed Rule to be unlawful, and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

COUNT III

The Proposed Rule and the Ruling:
Judicial Review Under the APA and the Medicare Act
(Decision is Contrary to Law)

81.     The Hospitals hereby incorporate by reference paragraphs 1 through 80 herein.

82.     The Ruling, which relies solely on the Proposed Rule, constitutes a significant departure from the Secretary's interpretation of the Medicare statute and the processing of appeals before the PRRB, therefore the Secretary was required to use notice-and-comment rulemaking under the APA, 5 U.S.C. §553.  The Secretary violated the Medicare Act and the APA by basing the Ruling solely on the Proposed Rule and failing to use notice-and-comment rulemaking when issuing the requirements included in the Ruling.

83.     The Ruling purports to address the Hospitals' appeals over the *Allina II* issue through an order requiring the MACs to recalculate the Hospitals' DSH payments in accordance with as yet unknown payment criteria, thereby divesting the PRRB of jurisdiction over the appeals covered by the Ruling.  This is improper because the Ruling deprives the Hospitals of a hearing on the issue that they appealed.

84.     Moreover, it would be in excess of the Secretary's authority under the Medicare Act to make a determination that his decision to require MACs to take action consistent with the Ruling resolves the provider's dissatisfaction.  *See* 42 U.S.C. §1395oo(a) ("Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if ... such provider ... is dissatisfied with a final determination ... as to the amount of total program reim-

bursement due the provider ... for the period covered by such report.").  In this case, however, as more specifically stated herein, the Ruling does not satisfy the Hospitals' dissatisfaction with the final determination as to the amount of total program reimbursement due for the period covered by the cost reports at issue in this Amended Complaint because the Hospitals are not being heard on the issue they appealed.

85.     The Medicare Act states that "no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation."  42 U.S.C. §1395hh(a)(2).

86.     The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability.  42 U.S.C. §1395hh(c).  The Freedom of Information Act (FOIA) similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability.  5 U.S.C. §552(a)(1)(D).

87.     The policy contained in the Ruling falls within the publication requirements of 42 U.S.C. §1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).  The Secretary's failure to adopt the Ruling using notice-and-comment rulemaking violates these requirements, and the Secretary is therefore precluded from applying the Ruling to the Hospitals.  42 U.S.C. §1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).  The Ruling is also unlawfully retroactive.

88.     As a result of the foregoing deficiencies, the Ruling and the Proposed Rule cause the Hospitals to suffer economic harm because their DSH payment will likely be lower than

34

those to which they are entitled under the law as interpreted by this Court and the D.C. Circuit.

89.   Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling, and to the extent it prejudices the Hospitals' appeal rights the Proposed Rule, to be unlawful and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

## COUNT IV

### The Proposed Rule and the Ruling:
### Mandamus

90.   The Hospitals hereby incorporate by reference paragraphs 1 through 89 herein.

91.   The Secretary has the non-discretionary duty to (a) reimburse the Hospitals fully at the amounts to which they are entitled under the law, (b) allow the Hospitals to exercise their appeal rights, and (c) otherwise comply with the law, including with regard to using notice and comment rulemaking.  The Hospitals are entitled to a writ of mandamus under 28 U.S.C. §1361, ordering the Secretary to comply with *Allina II*, prohibiting the PRRB from remanding the Hospitals' appeals to the MAC under the Ruling and the Proposed Rule, and providing for other relief.

## COUNT V

### The Proposed Rule and the Ruling:
### All Writs Act

92.   The Hospitals hereby incorporate by reference paragraphs 1 through 91 herein.

93.   The Secretary has violated the Medicare Act and APA by ordering the PRRB to remand the Hospitals' DSH appeals at issue to the applicable MACs.  Under the All Writs Act,

28 U.S.C. §1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This Court, properly seized of jurisdiction, should issue an order prohibiting the PRRB from remanding the Hospitals' appeals to the MAC under the Ruling and the Proposed Rule, and providing for other relief.

REQUEST FOR RELIEF

WHEREFORE, the Hospitals request:

1.      An order directing the Secretary to recalculate the Hospitals' DSH payments for the fiscal periods at issue in accordance with the *Allina* litigation and to make prompt payment of any additional amounts due the Hospitals plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d);

2.      In the alternative, an order requiring the PRRB to reinstate the Hospitals' remanded appeals and to conduct proceedings, including EJR proceedings, as in compliance with statute;

3.      An order declaring CMS Ruling 1739-R invalid substantively and procedurally and setting it aside, including the provisions that declare that the PRRB lacks jurisdiction over, and requiring the PRRB to remand, the Hospitals' *Allina II* claims in their appeals, which the Hospitals brought for the purpose of having their DSH payments calculated correctly, in accordance with the *Allina* litigation and, thus, reinstating the Hospitals' PRRB appeals;

4.      An order declaring invalid and setting aside the final decision of the PRRB dismissing and remanding to the MACs the Hospitals' appeal at issue herein;

41073061.1

5.      An order requiring the Secretary to cease and desist from applying the Ruling;

6.      Alternatively, the issuance of a writ of mandamus requiring the Secretary to (a) retroactively withdraw Ruling 1739-R and (b) reinstate the Hospitals' appeals before the PRRB;

7.      An order declaring the Proposed Rule unlawful and setting it aside to the extent it prejudices the Hospitals' statutory appeal rights;

8.      Costs of suit incurred by Hospitals, including reasonable attorneys' fees; and

9.      Such other and relief as the Court deems just and proper, including interest calculated in accordance with 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d), on any payments made as a result of this action .


Dated: October 6, 2021                          Respectfully submitted,

                                                  __/s/ Kenneth R. Marcus_____
                                                Kenneth R. Marcus
                                                DC Bar No. MI-0016
                                                HONIGMAN LLP
                                                660 Woodward Avenue, Suite 2290
                                                Detroit, MI 48226-3506
                                                Phone: (313) 465-7470
                                                Fax: (313) 465-7471
                                                kmarcus@honigman.com
                                                *Counsel for Plaintiffs*